UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

OMAR MARTE,
          Plaintiff,           :

          v.           :     No. 5:25-cv-4480

WAKEFERN FOOD CORPORATION,
WAKEFERN CORPORATION,
"ABC" COMPANIES 1-3 and 5, and
FTI MAINTENANCE INC.,
          Defendants       :

**O P I N I O N**
**Plaintiff's Motion to Remand, ECF No. 44 – Denied**

**Joseph F. Leeson, Jr.**           **March 30, 2026**
**United States District Judge**

## I. INTRODUCTION

This case involves a negligence claim brought against certain food distributors, transportation entities, and a trailer maintenance business, by one Omar Marte, whose hand was crushed by the door of a tractor trailer in August of 2023. Plaintiff Marte alleges that the door of the trailer was improperly maintained by Defendants, and that such negligence led to his injuries. This case was initially filed in the Court of Common Pleas of Philadelphia County but was removed to this Court by Defendant Wakefern Food Corp. and former Defendant Shop-Rite Supermarkets, Inc. based on diversity of citizenship. Several defendants have since been added, and some dismissed, but among those remaining are Wakefern Food Corp. and FTI Maintenance Inc.  Plaintiff Marte, a citizen of Pennsylvania, has filed a Motion to Remand for lack of diversity, claiming to have recently discovered that FTI Maintenance Inc.'s principal place of business is in Pennsylvania. For the reasons explained below, the Motion will be denied.

## II.    BACKGROUND[1]

### A.  Factual Allegations and Procedural History

Plaintiff Omar Marte is a resident of Allentown, Pennsylvania, *see* Second Am. Compl. ¶ 1, ECF No. 24, who worked for H & H Transportation Inc. ("H&H") in August of 2023, *see id.* at ¶ 21. On August 14, 2023, Marte was tasked by H&H with transporting a trailer from a distribution center in Breinigsville, Pennsylvania, to various locations, including New York City. *Id.* at ¶ 22. The trailer was owned by Defendant Wakefern Food Corp. *Id.* at ¶¶ 23, 47. Upon reaching his destination in New York City, Marte stood at the back of the trailer while a forklift operator removed pallets from the trailer. *See id.* at ¶¶ 37-40. After the last pallet was offloaded, Marte "began to close the roll up door of the subject trailer by pulling it down." *Id.* at ¶¶ 40-41. At the same time, Marte noticed that the goods on the last pallet were toppling and about to fall off the forklift, so he "reached toward the goods on the pallet with his right hand and placed his left hand on the floor of the trailer to steady himself." *Id.* at ¶¶ 42-43. The door of the trailer then closed forcefully, crushing Marte's left hand. *Id.* at ¶ 44.

On June 27, 2025, Marte filed a Complaint for negligence in the Court of Common Pleas of Philadelphia County against Wakefern Food Corp., Wakefern Corp., Shop-Rite, Shop-Rite Supermarkets, Inc., Shop Rite Supermarkets, Inc., and several John Does, labeled "ABC Companies" 1-5. *See* Complaint, ECF No. 1-2; Notice of Removal ¶ 1, ECF No. 1. On August 5,

---

[1]    This background section lists, and this Opinion considers, factual allegations in the operative pleading, the Second Amended Complaint, along with other exhibits and attachments to the Motion to Remand, the Oppositions, and Replies thereto, as such is appropriate under the applicable standard of review. "[A] motion to remand shares an essentially identical procedural posture with a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)," so "it is properly evaluated using the same analytical approach." *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 811 (3d Cir. 2016) (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). This Court finds that Marte has raised a factual challenge to diversity jurisdiction, *see* Section IV, *infra*, so it "may consider evidence outside the pleadings," *Gould Elecs. Inc. v. Unites States*, 220 F.3d 169, 176 (3d Cir. 2000) (internal quotations omitted).

2025, Defendants Wakefern Food Corp. and Shop-Rite Supermarkets, Inc.[2] removed the action to this Court. *See* Notice of Removal. On August 12, 2025, Marte filed an Amended Complaint in which he added Food Haulers, Inc. as a defendant. *See* Am. Compl., ECF No. 10. After being granted leave to amend, Marte filed a Second Amended Complaint on October 15, 2025, which added FTI Maintenance Inc. (hereinafter "FTI") as a defendant. *See* ECF No. 24. Defendant Wakefern Food Corp. (hereinafter "Wakefern")[3] filed its Answer to the Second Amended Complaint on October 30, 2025. *See* ECF No. 26. FTI filed its Answer with Crossclaims on December 10, 2025. *See* FTI Answer, ECF No. 29. Following a stipulation of dismissal by the parties, the Court dismissed Defendants Shop-Rite Supermarkets, Inc., Shop Rite Supermarkets, Inc., Shop-Rite, and Food Haulers, Inc., on December 22, 2025. *See* ECF No. 32. As of the date of this Opinion, Defendants Wakefern, FTI, and "ABC Companies" 1-3 and 5, remain.

**B. The Motion to Remand**

Upon adding FTI as a defendant in the Second Amended Complaint, Marte alleged that FTI was incorporated in New Jersey and has its principal place of business in New Jersey. *See* Second Am. Compl. at ¶ 8 ("Defendant, FTI Maintenance Inc., is a New Jersey corporation with a principal place of business located at 847 King Georges Road Suite 1 Fords, NJ 08863."); FTI Answer at ¶ 8 ("Admitted."). Then, on February 23, 2026, Marte filed a Motion to Remand this matter to state court, in which he argues that "information recently obtained during discovery reflects that Defendant FTI's principal place of business is in Pennsylvania, rather than New

---

[2]     In the Notice of Removal, Defendant Shop-Rite Supermarkets, Inc. states that it was "incorrectly identified as Shop Rite Supermarkets, Inc." in the Complaint, and that Shop-Rite Supermarkets, Inc. and Shop Rite Supermarkets, Inc. are not distinct entities, but one entity, properly identified as: "Shop-Rite Supermarkets, Inc." *See* Notice of Removal ¶ 2, ECF No. 1.
[3]     Defendant Wakefern Food Corp. alleges that it was "incorrectly identified as Wakefern Food Corporation and Wakefern Corporation" but is one entity, properly identified as: "Wakefern Food Corp." *See* ECF No. 26.

Jersey," thereby destroying diversity jurisdiction. *See* Motion, ECF No. 44 at ¶ 15. In support of this, Marte claims that "[o]utside of being incorporated in New Jersey . . . FTI's only connection with New Jersey is the fact that it maintained an office in New Jersey," *see id.* at ¶ 23, which it shared with "multiple companies," *see id.* at ¶¶ 24, 47, 49. Marte also claims that FTI is a trailer maintenance company that provides all its maintenance services "exclusively at 8301 Industrial Blvd, Breinigsville, PA 18031," *see id.* at ¶ 51 (citing FTI's Responses to Requests for Admissions, *see* Motion at Exhibit I, ¶¶ 4-5 (hereinafter "RFA Resp.")), and that FTI maintains all documents related to its maintenance services at that Pennsylvania address, *id.* at ¶¶ 25, 48; RFA Resp. at ¶¶ 23-24. Marte adds that FTI's sole owner and director, Thomas Pecora, indicated that he, alone, works out of the company's New Jersey office, *see* Motion at ¶¶ 25, 48-49, and admitted that he "is not involved in the day-to-day activities" of FTI's maintenance services, *see id.* at ¶ 26 (citing RFA Resp. at ¶ 18), and that he does not "control," "direct," or "coordinate" FTI's maintenance services, *see id.* at ¶ 26 (citing RFA Resp. at ¶¶ 19-21).

On March 9, 2026, Wakefern and FTI filed Responses in Opposition to the Motion to Remand, arguing that FTI's principal place of business is in New Jersey, as originally indicated. *See* Wakefern Br., ECF No. 47; FTI Resp., ECF No. 48; FTI Br., ECF No. 48-1. Wakefern added that, prior to the incident, it had entered into a Master Fleet Equipment Repair and Maintenance Services Agreement with FTI (hereinafter, the "MFA"), which was negotiated and executed by both parties in the state of New Jersey in 2018, and pursuant to which Wakefern was to send all notices to FTI's "principal place of business located at 847 King George Road, Fords, New Jersey 08863." *See* Wakefern Br. at 2; *see also* Motion at Exhibit J (Copy of MFA). Wakefern also attached an Affidavit from Joseph Nichols, its Vice President of Transportation, confirming these events and terms. *See* Wakefern Br. at Exhibit A ("Nichols Aff."). Meanwhile, FTI, in its

Responses to Marte's Requests for Admissions, indicated a recent change in its business address, stating: "FTI Maintenance, Inc.'s new address is 234 Main Street, 2nd Floor, Woodbridge, NJ 07095." RFA Resp. at ¶¶ 15, 22. FTI's Response in Opposition to the Motion also reflected this new "main office" address, referring to it as FTI's "principal place of business." FTI Br. at 3. FTI attached an affidavit from its owner, Mr. Pecora, who states that FTI's employees provide maintenance work exclusively in Pennsylvania, and that he "do[es] not personally perform any hands-on maintenance on . . . trailers," but instead "direct[s] the overall operations of FTI Maintenance, Inc. from its main office located at 234 Main Street, 2nd Floor, Woodbridge, New Jersey 07095." *See* Pecora Aff. ¶¶ 3-6, ECF No. 48-2. Mr. Pecora's affidavit further indicates that he makes all final decisions on FTI's contractual issues, like those arising from the MFA, and all final decisions on employee disciplinary issues, from the New Jersey office. *See id.* at ¶¶ 7-8. Marte replied to Wakefern and FTI's arguments on March 15, 2026. *See* ECF Nos. 49-50. The Motion is now ready for review.

## III.    LEGAL STANDARDS

### A.  Motion to Remand for Lack of Subject Matter Jurisdiction

Under 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a state court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." *See Lane v. CBS Broad. Inc.*, No. 08-3175, 2008 WL 3930287, at *2 (E.D. Pa. Aug. 27, 2008) ("State-court actions that originally could have been filed in federal court may be removed to federal court.") (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also* 28 U.S.C. § 1446. "The party seeking removal carries the burden of proving that removal is proper." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015); *see*

*Lane*, 2008 WL 3930287, at *2 ("The removing party bears the burden of proving that federal subject matter jurisdiction exists.") (citing *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004)). However, once removed to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"[A] motion to remand shares an essentially identical procedural posture with a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)," so "it is properly evaluated using the same analytical approach." *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 811 (3d Cir. 2016) (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Id.* (citing *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)). "A facial attack 'challenges subject matter jurisdiction without disputing the facts alleged in the [notice of removal], and it requires the court to consider the allegations . . . as true.'" *Id.* (citing *Davis*, 824 F.3d at 346). A factual attack, by contrast, disputes the underlying factual allegations and "involves the presentation of competing facts." *Id.* Thus "[i]n reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," whereas "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (internal quotations omitted), *holding modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).

### B.  Corporate Citizenship

Under the federal diversity jurisdiction statute, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or

foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The test for determining *where* a corporation has its principal place of business was announced by the Supreme Court in *Hertz Corp. v. Friend*, and is also referred to as the "nerve center" test. *See* 559 U.S. 77 (2010). Under *Hertz*, a corporation's "principal place of business" is "the place where a corporation's officers direct, control, and coordinate the corporation's activities," also called the corporation's "nerve center." 559 U.S. at 92-93. Normally, this refers to the corporation's headquarters, "provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93. A corporation's "nerve center" is a single place within a state, *id.*, thus the *Hertz* test is designed to "point[] courts in a single direction, toward the center of overall direction, control, and coordination," *id.* at 96.

## IV.   ANALYSIS

Here, Marte does not classify his jurisdictional challenge as factual or facial. However, he includes a factual background section in his Motion and attaches several exhibits in support of his arguments for remand, which were not referenced in the Notice of Removal or Marte's Second Amended Complaint, and which raise issues of fact—namely, concerning the specific location of FTI's New Jersey office and the actions performed there by FTI's owner, Thomas Pecora. *See* Motion; *id.* at Exhibit H (Cert. of Inc.); RFA Resp.; MFA. The Court therefore presumes that Marte is "contesting issues of fact and, therefore, brings a factual challenge pursuant to Rule 12(b)(1)." *See Moyer Packing Co. v. United States*, 567 F. Supp. 2d 737, 749 (E.D. Pa. 2008) (finding that movant brought a factual challenge under Fed. R. Civ. P. 12(b)(1) where movant "included a factual background section and attached exhibits in support of its motion," including declarations of officials, which were "not referenced in the Complaint and raise[d] issues of fact").

It is undisputed here that FTI is a citizen of New Jersey due to its incorporation there. *See* Motion at ¶ 39; Wakefern Br. at 3-4; FTI Br. at 2-3. Wakefern and FTI assert that FTI's citizenship is limited to New Jersey because its principal place of business is also there. *See* Wakefern Br. at 3-4; FTI Br. at 3-5. Marte disagrees, claiming that FTI's principal place of business is its distribution center, located at "8301 Industrial Blvd, Breinigsville, PA 18031." *See* Motion at ¶¶ 15-16. Marte argues that the Breinigsville distribution center is FTI's "nerve center" because (i) that is where all of FTI's trailer maintenance services are performed, *id.* at ¶¶ 20, 51, (ii) all documents related to its maintenance services are kept at that address, *see id.* at ¶¶ 25, 48; RFA Resp. at ¶¶ 23-24, and (iii)  FTI "admitted" that Mr. Pecora, who works from the New Jersey office, "does not control," "does not direct," "does not coordinate," and "is not involved in the day-to-day activities of" FTI's maintenance services in Pennsylvania, *see* Motion at ¶ 26; RFA Resp. at ¶ 18-21.

Marte's argument misses the point. A corporation's nerve center is not where the bulk of its day-to-day services are performed, but the place from which its leading officers *run* the company and its overall operations. *See Hertz*, 559 U.S. at 92-96 (abrogating the "general business activities" test in favor of the "nerve center" test, because "measuring the total amount of business activities that the corporation conducts" in a state is less efficient than identifying the corporate "brain" located within a state). Under *Hertz*, it is entirely possible that a corporation's nerve center is in a different state than its distribution or maintenance center, because it is expected that "the corporation may have several plants, many sales locations, and employees located in many different places." *Id.* at 95. The Court in *Hertz* also warned that the application of the nerve center test may produce unpredicted results: "For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers

direct those activities just across the river in New York, the 'principal place of business' is New York." *Id.* at 96. Here, the facts of FTI's business operations are strikingly similar. FTI's maintenance operations are performed "exclusively" in Breinigsville, Pennsylvania. Motion at ¶ 51, Pecora Aff. at ¶ 4; *see* RFA Resp. at ¶ 5. Mr. Pecora admitted that he "do[es] not personally perform any hands-on maintenance on . . . trailers at the distribution center located at 8301 Industrial Blvd, Breinigsville, PA 18031," Pecora Aff. ¶ 5, but this is unsurprising. Mr. Pecora is the owner of FTI—a "top officer" who "direct[s] the overall operations of FTI Maintenance, Inc. from its main office located at 234 Main Street, 2nd Floor, Woodbridge, New Jersey 07095." *Id.* at ¶ 6. Just like the example provided in *Hertz*, FTI's New Jersey address is "just across the river" from Pennsylvania, where its distribution center is located. Yet, Mr. Pecora directs business operations, contracts with business partners, *see* Nichols Aff. at ¶¶ 4-10, and "make[s] all final decisions on contractual issues . . . [and] disciplinary issues" from that New Jersey office, *see* Pecora Aff. at ¶¶ 7-8, thus making it FTI's nerve center.

Nevertheless, Marte also appears to assert that FTI's New Jersey office is a mere façade for a nerve center because it is a "shared office" used by multiple companies, *id.* at ¶¶ 47, 49, and because no employees work there regularly, other than Mr. Pecora, *id.* at ¶¶ 25, 48. In support of this, Marte quotes *Hertz* for the instruction that a nerve center must be "more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat." *See id.* at ¶ 42 (quoting *Hertz*, 559 U.S. at 97). Yet, as the Third Circuit suggested in *Johnson v. SmithKline Beecham Corp.*, a movant's attempt to show that an office is small and infrequently visited does not necessarily mean that no substantive decision-making occurs there. *See* 724 F.3d 337, 353 (3d Cir. 2013). The *Johnson* court even went so far as to distinguish *Hertz*'s denigration of all such remote offices and the executive functions performed there, explaining that the *Hertz*

9
033026

decision was made "in the context of a case involving 'a sprawling operating company,' with 'extensive activities carried out by 11,230 employees at facilities in 44 states,'" and that other entities may run their operations differently. 724 F.3d at 353-54. By comparison, FTI is a small-scale trailer maintenance business with one distribution center in Pennsylvania and one main office in New Jersey, from which its sole owner works. Thus, for a smaller corporation like FTI, a shared office space just big enough for Mr. Pecora "may well be all that is required to direct and control the company's limited work." *See id.* at 354 (making a similar distinction from *Hertz*'s decree that a nerve center is "not simply an office where the corporation holds its board meetings" (quoting *Hertz*, 559 U.S. at 93), because for certain entities, "short, quarterly board meetings may well be all that is required," and brevity does not necessarily reflect the absence of substantive decision-making); *see also id.* at 343, 353, 355-56 (finding that a defendant's "ten-by-ten foot office" that was "rarely visited" was still the entity's nerve center, because it was the center of overall direction, control, and coordination).

As for Marte's argument that FTI "admitted" in its Responses to the Requests for Admissions that Mr. Pecora does not "direct," "control," or "coordinate" FTI's "maintenance services," RFA Resp. at ¶¶ 19-21, this does not negate the likelihood that FTI's nerve center is its New Jersey office. Crucially, FTI's responses indicate that Mr. Pecora does not direct, control, or coordinate FTI's daily *maintenance services*. *See id.* However, this does not speak to his role in directing the company's *overall* business operations. Mr. Pecora "is not involved in the day-to-day activities of [FTI]'s maintenance services," *id.* at ¶ 18, and nor would he be, as he works from the New Jersey office and such "day-to-day activities" take place exclusively in Pennsylvania, not New Jersey, *see id.* at ¶¶ 11-12. These admissions only serve to confirm that Mr. Pecora is not himself a mechanic, *see id.* at ¶ 17, but the sole owner of FTI, *id.* at ¶ 16. He

performs no maintenance tasks himself and does not personally manage the onsite mechanics at the Breinigsville distribution center, nor does he directly oversee or supervise their work. *Id.* at ¶¶ 17-21. At most, FTI's admissions suggest that there might be a mid-level manager working under Mr. Pecora, whom he trusts to manage the day-to-day maintenance work in Pennsylvania, while he manages the corporation's overall business activities from the New Jersey office. Thus, the Court finds Marte's emphasis on these responses misplaced, and the resultant argument unpersuasive—the record still points in a single direction, toward FTI's New Jersey office as the company's "center of overall direction, control, and coordination." *Hertz*, 559 U.S. at 96.

Lastly, the Court will address FTI's change in business address, and Marte's insistence that such change demonstrates that FTI's nerve center is in Pennsylvania. On October 15, 2025, the Second Amended Complaint was filed, adding FTI as a defendant. *See* ECF No. 24. In it, Marte alleged that FTI's principal place of business was "located at 847 King Georges Road Suite 1 Fords, NJ 08863." Second Am. Compl. at ¶ 8. FTI's Answer, filed on December 10, 2025, "admitted" to this fact. *See* FTI Answer at ¶ 8. Months later, the Court received different information. When Marte filed his Motion to Remand on February 23, 2026, he attached FTI's Responses to the Requests for Admissions, dated February 17, 2026, in which FTI stated that its "new address is 234 Main Street, 2nd Floor, Woodbridge, NJ 07095." *See* RFA Resp. at ¶¶ 15, 22. When Defendants responded to the Motion to Remand on March 9, 2026, Wakefern still recognized FTI's principal place of business as "847 King Georges Road Suite 1 Fords, NJ 08863," because it had negotiated and entered into the MFA at that address with FTI, and because the MFA directed Wakefern to send all correspondence related to the agreement to that address. *See* Wakefern Br. at 2; Nichols Aff. However, FTI's Response in Opposition echoed its

notification from February, that its "principal place of business is its main office located at 234 Main Street, 2nd Floor, Woodbridge, New Jersey 07095." FTI Br. at 3.

Marte highlights the different New Jersey addresses—and particularly, Wakefern's failure to acknowledge FTI's change in address—as evidence that FTI's principal place of business is not located in New Jersey. *See* ECF No. 49 at 2-3. Marte claims that "if 234 Main Street, 2nd Floor, Woodbridge, NJ 07095 was a 'nerve center' of Defendant FTI's business, its sole customer (Defendant Wakefern) would know it to be the address where Defendant FTI was conducting business." *Id.* at 3. This argument is unavailing. Wakefern likely relies on the MFA as evidence of FTI's address, but that agreement was executed in 2018, and the record suggests that FTI changed its business address only recently. As of December 10, 2025, in its Answer to the Second Amended Complaint, FTI still "admitted" to having a business address in Fords, New Jersey. It was not until February 17, 2026, when FTI's Responses to the Requests for Admissions gave first mention of a new business address in Woodbridge, New Jersey. The Court therefore presumes that FTI's change in address occurred between those dates: sometime after December 10, 2025, and before February 17, 2026. Wakefern's assumption that FTI's business address remained in Fords, New Jersey, is not proof that the Woodbridge office is not the current nerve center; it merely reflects that the Fords, New Jersey, office was FTI's nerve center at the time the MFA was executed in 2018. At most, Wakefern's statement suggests that it incorrectly assumed FTI's business address to be the same as it had been for years, without undergoing additional inquiry. In any case, Wakefern's mistake is of little consequence to this analysis. Both Wakefern and FTI allege that, at all times relevant to this inquiry, FTI's principal place of business was at a New Jersey address, and therefore diverse from Marte. The Court recognizes this, and after considering the evidence presented on all sides, finds support in the record for FTI's claim that

its principal place of business is now located at 234 Main Street, 2nd Floor, Woodbridge, New Jersey 07095. *See Gould Elecs.*, 220 F.3d at 177 (explaining that, in a factual challenge to subject matter jurisdiction, the court may "determine jurisdiction by weighing the evidence presented by the parties"). Since FTI is incorporated in New Jersey, and has its principal place of business in New Jersey, it is diverse from Marte's state of residency, Pennsylvania. The Motion to Remand will be denied, as complete diversity exists.[4]

## V.   CONCLUSION

The Court finds that the parties are diverse and thus it has subject matter jurisdiction over the instant case. Marte's Motion to Remand for lack of subject matter jurisdiction is therefore denied.  A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[4]   In his Replies to Wakefern and FTI, Marte makes the following request:

> Should the Court afford any weight to the affidavits of Mr. Nichols or Mr. Pecora and decline to remand on that basis, Plaintiff respectfully requests leave to renew the instant motion following the depositions of these witnesses, at which time Plaintiff will have the opportunity to test the factual basis and credibility of those averments. The depositions of Mr. Pecora and the Defendant Wakefern's corporate designee are scheduled for March 20, 2026.

ECF No. 49 at 4; ECF No. 50 at 5. To the extent Marte anticipates he will discover additional information which proves a lack of diversity, "jurisdictional bars . . . 'may be raised at any time' and courts have a duty to consider them *sua sponte*." *Wilkins v. United States*, 598 U.S. 152, 157 (2023); *see United States v. Kalb*, 891 F.3d 455, 459 (3d Cir. 2018) ("Objections based on a tribunal's lack of jurisdiction may be raised at any time.") (citing *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013)); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte").